**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                No. CR 06-1618 JB

GERARDO PAEZ-SEGOVIA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant's Sentencing Memorandum, Objection to the Pre-Sentence Report and Request for a Fair and Reasonable Sentence Under 18 U.S.C. § 3553(a), filed October 30, 2006 (Doc. 16)("Sentencing Memo"); and (ii) Defendant's Supplemental Sentencing Memorandum, filed June 21, 2007 (Doc. 28)("Supplemental Sentencing Memo"). The Court held a sentencing hearing on August 2, 2007. The primary issue is whether, because Defendant Gerardo Paez-Segovia's previous felony conviction was vacated for ineffective assistance of counsel, the Court should decline to apply a 16-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A). Because the Court finds that controlling caselaw mandates that § 2L1.2(b)(1)(A)'s enhancement be applied, the Court will add 16 levels to Paez-Segovia's base-offense level. Because the Court concludes, however, that the resulting advisory Guidelines' imprisonment range is inappropriate for Paez-Segovia, the Court will vary downward from the sentence the Guidelines recommend.

**FACTUAL BACKGROUND**

Paez-Segovia has many strong ties to the United States. His parents, siblings, significant other, children, and ex-wife reside in the United States, and he has lived and worked in the United States for a significant period. In 2004, Paez-Segovia was convicted of and sentenced for a violent felony, stemming from a domestic incident involving his significant other. He was deported to Mexico after being convicted and sentenced.

    **1.**    **Personal Background.**

Paez-Segovia was born on June 19, 1969, in Delicias, Chihuahua, Mexico. See Pre-Sentence Investigation Report ¶ 28, at 8, disclosed August 24, 2006 ("PSR"). Paez-Segovia is one of five siblings. See id. ¶ 28, at 8. He attended school through the sixth grade in Mexico. See id. ¶ 37, at 10.

Paez-Segovia first entered the United States in 1988. See id. ¶ 30, at 8-9. His parents and siblings reside in the United States. Paez-Segovia's parents and one sister reside in Anthony, New Mexico, one sister resides in Brazito, New Mexico, another sister resides in San Miguel, New Mexico, and a brother resides in Raton, New Mexico. See id.

In 1990, Paez-Segovia married Guadalupe Lopez-Gomez in El Paso, Texas. See id. ¶ 31, at 9. Paez-Segovia and Lopez-Gomez divorced in or around 1994. See id. The couple had two sons, Daniel and Gerardo, Jr. See id. Lopez-Gomez and the children reside in Las Cruces, New Mexico. See id. After his divorce, Paez-Segovia became involved with Louisa Ramos-Chavez. See id. ¶ 32, at 9. Together, they had a daughter, Griselda. See id.

While in the United States, Paez-Segovia has been consistently employed. See id. ¶¶ 38-44, at 10. Before 2002, he had not been convicted of a criminal offense. See id. ¶ 21, at 5.

**2.     The Domestic-Violence Conviction.**

On February 10, 2004, Paez-Segovia was arrested for Aggravated Battery Against a Household Member and False Imprisonment. See id. ¶ 23, at 6-7. Ramos-Chavez reported that Paez-Segovia, apparently intoxicated, woke her up and accused her of wanting to go to bed with his friend. See id. Ramos-Chavez stated that, while he was arguing with her, he struck her on the side of her face with his open hand. See id. Ramos-Chavez also stated that, when she grabbed Paez-Segovia in the face in an attempt to protect herself, he became more angry and hit her another four times. See id. Ramos-Chavez further reported that, when she threatened to call the police, Paez-Segovia grabbed her around the neck and squeezed. See id.

Paez-Segovia represents that, while the aggravated battery and false imprisonment charges against him were pending in the Third Judicial District Court for the State of New Mexico, his counsel persuaded him to plead guilty by misrepresenting the consequences of such a plea. See Supplemental Sentencing Memo at 2. Paez-Segovia maintains that, although he told his counsel that he was innocent of the charges, his counsel persuaded him to plead guilty by falsely representing to him that he would be pleading to a misdemeanor offense. See id. Paez-Segovia submits that his counsel never told him that he would be deported if he pled guilty. See id.

Paez-Segovia represents that, based on his counsel's misrepresentations, he pled guilty and was subsequently deported. See id. Paez-Segovia received a sentence of three-years imprisonment and two years of parole for his Aggravated Battery Against a Household Member conviction, and eighteen-months imprisonment with one year of parole for his False Imprisonment conviction. See PSR ¶ 23, at 6. Paez-Segovia was given credit for 117 days of pre-sentence confinement, and his sentence was suspended to four-years probation and six months of concurrent parole. See id.

Since his conviction for domestic violence, Paez-Segovia has not drunk alcohol and has tried

to reform his life.

Following his deportation, Paez-Segovia re-entered the United States, because his entire family lives in this country. As a result, Paez-Segovia was arrested.

## PROCEDURAL BACKGROUND

Paez-Segovia filed a sentencing memorandum and objections to the PSR in October 2006. Approximately eight months later, he filed a supplemental sentencing memorandum. At the sentencing hearing, Paez-Segovia stated that the Addendum to the PSR that the United States Probation Office ("USPO") prepared adequately addressed his October 2006 objections to the PSR, see Transcript of Hearing at 4:12-14 (Pori)(taken August 2, 2007)("Transcript"),[1] that he no longer had any objections to the PSR, see id., and that only the argument presented in his supplemental sentencing memorandum remained to be addressed, see id. at 4:15-20. As such, in its Procedural Background and Analysis sections, the Court will limit its focus to the circumstances and issues that are relevant to Paez-Segovia's supplemental sentencing memorandum.

### 1. Plea Agreement.

On August 4, 2006, the United States filed an Information charging Paez-Segovia with Re-entry of a Removed Alien, in violation of 8 U.S.C. § 1326(a) and (b). See Information, filed August 4, 2006 (Doc. 9). On the same day, Paez-Segovia waived prosecution by an Indictment, consented to proceed by Information, and agreed to enter his plea before a United States Magistrate Judge. See Consent to Appear Before a United States Magistrate Judge in a Felony Case and Waiver of Indictment, filed August 4, 2006 (Doc. 10). Also on August 4, 2006, Paez-Segovia pled guilty to violating § 1326(a) and (b). See PSR at 1.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

**2.     PSR.**

In paragraph 13 of the PSR, the USPO recommends increasing Paez-Segovia's offense level by 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), because he was previously deported after being convicted of a crime of violence -- Aggravated Battery Against a Household Member. See PSR ¶ 13, at 4. Adding 16 levels to Paez-Segovia's base-offense level of 8 and subtracting 3 levels for Paez-Segovia's acceptance of responsibility provides a total-offense level of 21. See id. ¶ 19, at 4. Paragraph 25 of the PSR reflects the USPO's determination that Paez-Segovia's criminal-history category should be III. Based on a total-offense level of 21 and a criminal-history category of III, the USPO, in the PSR, calculates Paez-Segovia's advisory Guidelines' sentencing range at 46 to 57 months. See id. at 11.

**3.     Petition for a Writ of Error Coram Nobis.**

On November 22, 2006, Paez-Segovia filed a Petition for a Writ of Error Coram Nobis in the Third Judicial District Court for the State of New Mexico, challenging his felony conviction for Aggravated Battery Against a Household Member. See Supplemental Sentencing Memo at 3. Paez-Segovia alleged that he was denied effective assistance of counsel, because his lawyer misrepresented the legal and immigration consequences of pleading guilty to the charges brought against him in 2004. See id. On May 23, 2007, the Third Judicial District Court for the State of New Mexico issued an order acknowledging that Paez-Segovia received ineffective assistance of counsel, granting his writ petition, and vacating his prior felony conviction. See id., Exhibit A, Stipulated Order Granting Petition for Writ of Error Corrum Nobis and Setting Aside Judgement and Conviction, dated May 23, 2007.

**4.     Supplemental Sentencing Memorandum.**

Paez-Segovia filed a supplemental sentencing memorandum on June 21, 2007. See Doc. 28.

In his supplemental memorandum, Paez-Segovia contends that the Court should, pursuant to 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220 (2005), impose a sentence of 12 to 18 months, because such a sentence is reasonable given the vacation of his felony conviction. See Supplemental Sentencing Memo at 5-9, 11. Paez-Segovia contends that, based on the vacation of his felony conviction, his sentence should not reflect the addition of 16 levels to his base-offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A). See id. at 5-9. He argues that sentencing him consistent with an enhancement that is based upon his vacated conviction would violate due process, impose a sentence that is greater than necessary to achieve the purposes of sentencing, and result in a miscarriage of justice. See id. at 5-11.

### 5. Second Addendum to the PSR.

The USPO issued a Second Addendum to the PSR addressing the sentencing implications of the vacation of Paez-Segovia's felony conviction on August 1, 2007. See Second Addendum to the PSR at 2, dated August 1, 2007 ("Second Addendum"). In the Second Addendum, the USPO recommends that the Court not apply § 2L1.2(b)(1)(A)'s 16-level enhancement. See id. at 1. The Second Addendum reflects a 2-level, rather than a 3-level, adjustment for acceptance of responsibility. See id. at 2. The Second Addendum also presents the USPO's determination that, because Paez-Segovia's felony conviction has been vacated, Paez-Segovia's criminal-history category is I. See id. Based on a post-vacation, revised total-offense level of 6 and criminal-history category of I, the UPSO calculates that the advisory Guidelines' sentencing range is 0 to 6 months. See id.

### 6. Hearing.

At the sentencing hearing, Paez-Segovia conceded that, according to the precedent of the United States Court of Appeals for the Tenth Circuit, the USPO was correct in initially adding, as

the original PSR reflects, 16 levels to his base-offense level pursuant to § 2L1.2(b)(1)(A).  See Transcript at 4:21-5:10 (Pori).  Paez-Segovia also stated, however, that, if a prior conviction was obtained "in violation of a defendant's constitutional right to effective assistance of counsel or if the individual is actually innocent, . . . then it does seem to make sense that there would be constitutional problems with using that" conviction as a basis to enhance the defendant's sentence. Id. at 6:23-7:5 (Pori).  Paez-Segovia contended that, even after the Supreme Court of the United States' decision in United States v. Booker, a due process challenge can be made to the Sentencing Guidelines.  See Transcript at 13:16-22 (Pori).  Specifically, Paez-Segovia argued that, because § 2L1.2(b)(1)(A) only applies to individuals who re-enter the United States after they have been deported, sentencing him consistent with the 16-level enhancement based on a felony conviction that had been vacated would impermissibly deprive him of due process based on his national origin and race.  See Transcript at 13:21-14:9 (Pori).

The United States agreed with Paez-Segovia in part at the sentencing hearing.  The United States stated that, "if the Court were to apply a Booker analysis, . . . it would be unreasonable to apply the 16-level enhancement."  Transcript at 21:17-19 (Ortega).  The United States also stated that "a fair sentence . . . would be one that is certainly less than what was originally calculated in the PSR," and that "[it] would leave it to the Court's discretion to determine what a reasonable sentence would be. . . ."  Id. at 22:19-24.

### U.S.S.G. § 2L1.2(b)(1)(A)

U.S.S.G. § 2L1.2(b)(1)(A) provides:

If the defendant previously was deported, or unlawfully remained in the United States, after–

(A)   a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a

> firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels. . . .

U.S.S.G. § 2L1.2(b)(1)(A). According to Application Note 1(B)(iii) of U.S.S.G. § 2L1.2, a "crime of violence" includes:

> murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, Application Note 1(B)(iii). Furthermore, pursuant to Application Note 6 of § 2L1.2, "[a] conviction taken into account under [§ 2L1.2(b)(1)] is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A." U.S.S.G. § 2L1.2, Application Note 6.

### LAW REGARDING SENTENCING ENHANCEMENTS AND VACATED CONVICTIONS

In United States v. Cisneros-Cabrera, 110 F.3d 746 (10th Cir. 1997), cert. denied 522 U.S. 969 (1997), the Tenth Circuit considered whether § 2L.1.2's 16-level enhancement was properly applied where the prior conviction upon which the enhancement was based had been vacated before sentencing, because the defendant had received ineffective assistance of counsel. See United States v. Cisneros-Cabrera, 110 F.3d at 746-47. In United States v. Cisneros-Cabrera, the defendant pled guilty to violating 8 U.S.C. § 1326(a) and (b), re-entering illegally after deportation following conviction for an aggravated felony. See United States v. Cisneros-Cabrera, 110 F.3d at 747. Before re-entering the United States illegally, the defendant has been convicted in state court of possession with intent to distribute cocaine. See id. The Cisneros-Cabrera court ruled that "the statute and sentencing guidelines applicable to [the] specific offense make the vacation of the state

conviction irrelevant, and imposition of the enhancement was proper because the state conviction was still valid when [the defendant] reentered the United States." Id. at 746-47. The Tenth Circuit in United States v. Cisneros-Cabrera held:

> Thus, while true most other sentence enhancement provisions consider only those convictions valid at the time of sentencing, in this case, the relevant time frame for determining whether the sentence enhancement should apply is specifically provided by statute. Based on the text of § 2L1.2(b)(2), [the defendant] triggered the 16-level sentence increase when he was deported after his aggravated felony conviction. Of course, the sentence enhancement provision of § 1326(b)(2) did not come into play until [the defendant] later reentered the United States illegally, violating § 1326(a).

United States v. Cisneros-Cabrera, 110 F.3d at 748.

In reaching its conclusion in United States v. Cisneros-Cabrera, the Tench Circuit discussed Application Note 6 of U.S.S.G. § 4A1.2. See United States v. Cisneros-Cabrera, 110 F.3d at 748. That application note prohibits sentencing courts from considering convictions that have been ruled constitutionally invalid when determining defendants' criminal-history categories. See id.; U.S.S.G. § 4A1.2, Application Note 6. The Cisneros-Cabrera court noted that other Guidelines' provisions relating to offense-level enhancements impose the same restriction by cross-referencing § 4A1.2, see, e.g., U.S.S.G. § 2K2.1, n.5, U.S.S.G. § 4B1.2, n.4, but that § 2L1.2 contains no such cross-reference. "To the contrary, [§ 2L1.2] mandates that any enhancement under its provisions applies in addition to any criminal history points added under § 4A1.2." United States v. Cisneros-Cabrera, 110 F.3d at 748 (citing U.S.S.G. § 2L1.2, n.5)(internal quotations omitted)(emphasis in original). The Tenth Circuit in United States v. Cisneros-Cabrera thus found support for its holding in the fact that other sentence enhancement provisions exclude from consideration, via cross-reference, convictions vacated on constitutional grounds.

In United States v. Garcia-Lopez, 375 F.3d 586 (7th Cir. 2004), the United States Court of Appeals for the Seventh Circuit acknowledged the Tenth Circuit's position on U.S.S.G. §

2L1.2(b)(1)(A).  After stating that "an enhancement based upon a prior conviction vacated as the result of a determination of innocence might [] raise due process concerns, as might enhancements based upon egregious errors of law or constitutional defect," the Seventh Circuit cited, using a "but compare" signal, United States v. Cisneros-Cabrera, with the following parenthetical: "affirming enhancement under § 2L1.2(b)(2) based upon a drug trafficking conviction even though the conviction was vacated by the state court due to ineffective assistance of counsel." United States v. Garcia-Lopez, 375 F.3d at 589.

### LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker, "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 245-46.  Under the advisory Guidelines' scheme, "district courts have a freer hand in determining sentences."  United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant."  Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty

of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with

Congressional intent, sentences must be "reasonable." Id. at 260-61.  Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).  First, the Tenth Circuit reviews the district court's consideration of the applicable Guidelines' range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id.  Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007)(unpublished).

On the other hand, criminal sentences that vary materially from the properly calculated Guidelines' sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance."  Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d 896, 907 (10th Cir. 2006)).[2]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded Guidelines' sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence

---

[2] In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach next term in United States v. Gall, No. 06-7949.  See Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits adopting the same approach). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the Guidelines' range.  Rita v. United States, 127 S. Ct. at 2467.

should apply." Rita v. United States, 127 S. Ct. at 2465. More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence." Id. at 2466 (emphasis in original).

## ANALYSIS

### 1. Calculation of the Guideline Sentence.

Paez-Segovia concedes that the USPO correctly applied, under the Guidelines, § 2L1.2(b)(1)(A)(ii)'s 16-level sentencing enhancement, as reflected in the PSR. See Transcript at 4:21-5:10 (Pori). Even if Paez-Segovia did not so concede, however, the Court would still find that the 16-level enhancement was correctly applied under the Guidelines. The Court believes that the plain language of § 2L1.2(b)(1)(A)(ii), the Tenth Circuit's decision in United States v. Cisneros-Cabrera, and the nature of Paez-Segovia's vacated felony conviction for Aggravated Battery Against a Household Member mandate, under the Guidelines, the application of the 16-level enhancement to Paez-Segovia's offense level. The Court does not believe that it is its role to pass upon the overall wisdom of § 2L1.2(b)(1)(A) because of its application to one particular defendant. See Rita v. United States, 127 S. Ct. 2456, 2463 (2007)(stating that, with respect to § 3553(a)'s basic objectives, the court operates at the "retail level" and the Sentencing Commission operates at the "wholesale level"). Because the Court concludes, and Paez-Segovia concedes, that the USPO was correct in adding under the Guidelines, as the original PSR reflects, 16 levels to Paez-Segovia's base-offense level pursuant to § 2L1.2(b)(1)(A), the Court will focus its analysis on examining Paez-Segovia's due process/equal protection challenge and request for a variance from the sentence that the Guidelines' recommend.

### 2. Due Process/Equal Protection.

Applying the 16-level enhancement yields a total-offense level for Paez-Segovia of 21, and,

pursuant to § 4A1.2, Paez-Segovia's proper criminal-history category is I. The advisory Guidelines' imprisonment range for a defendant with a total-offense level of 21 and a criminal-history category of I is 37 to 46 months. Paez-Segovia challenges the 16-level enhancement by contending that it violates due process and equal protection by treating illegal aliens under federal immigration laws differently than United States citizens under federal laws. See Transcript at 14:12-19:10 (Pori). Because many of the illegal aliens to which § 2L1.2(b)(1)(A)'s enhancement is applied are Mexican nationals, Paez-Segovia argues that this Guidelines' provision discriminates on the basis of national origin. See id.

Insofar as Paez-Segovia is attempting to make a constitutional due process argument against § 2L1.2(b)(1)(A)'s operation, the Court is unconvinced. First, without deciding that a constitutional challenge can never be made to the Guidelines,[3] the Court nevertheless believes that the Supreme Court, with its decision in United States v. Booker, eliminated Sixth Amendment problems with and considerably undercut the constitutional arguments that defendants' counsel can make against the Guidelines by making them advisory. See, e.g., United States v. Lakes, 207 Fed. Appx. 703, 704 (7th Cir. 2007)(stating that the defendant's equal protection and due process challenges to the application of U.S.S.G. § 5G1.3 were "illusory," because, after United States v. Booker, the Guidelines are "merely advisory"). Second, while the Tenth Circuit in United States v. Cisneros-Cabrera did not expressly deal with a due process/equal protection challenge, the Tenth Circuit does not appear to have any reservations about its result, which was based on the wording of the statute. Third, the Court believes that Congress can, without violating the Due Process Clause, distinguish

---

[3] For instance, taking an extreme example, if the Guidelines gave higher sentences for African-Americans than for Caucasians, should the courts declare the advisory Guideline unconstitutional, declare the advisory Guidelines' sentence unconstitutional, or, because it is advisory, simply refuse to apply the Guidelines' sentence?

between citizens and non-citizens for purposes of determining how prior convictions should be taken into account. See United States v. Adeleke, 968 F.2d 1159, 1160 (11th Cir. 1992)("[T]he Sentencing Commission may have concluded that an alien who has been convicted of a felony should be strongly deterred from re-entering the United States. . . . This policy justifies distinguishing between aliens with prior convictions and citizens with prior convictions. We believe that [§ 2L1.2(b)(1)(A)] pursues this policy rationally."). The fact that the force of the United States' immigration laws currently falls more heavily on Hispanics or Mexican nationals does not render them unconstitutional as written or as applied; the Guidelines' policy applies to all non-citizens, and Paez-Segovia does not present evidence that it is not being applied to non-Mexican nationals or non-Hispanics. See United States v. Garcia-Carrasquillo, 483 F.3d 124, 134 (1st Cir. 2007)(discussing crack and powder cocaine equivalency ratios and stating that "Congress had sufficient reasons for treating crack more harshly than powder cocaine, . . . there are racially neutral grounds for the classification that more plausibly explain its disparate impact on minorities")(internal quotations and alterations omitted). Finally, the circumstances here -- a defendant successfully having his prior state conviction vacated while his federal case is pending -- is so rare that it is difficult to know -- and is not knowable from the record before the Court -- how statistically significant the enhancement's application to Hispanics, Mexican nationals, and non-Mexican nationals is.

### 3. **Variance under Booker.**

The Court finds Paez-Segovia's variance argument more persuasive. Paez-Segovia contends that sentencing him consistent with a 16-level enhancement based upon his vacated felony conviction would be unreasonable under 18 U.S.C. § 3553(a). See Supplemental Sentencing Memo at 5. Specifically, Paez-Segovia submits that, given all of the relevant circumstances, a sentence of 12 to 18 months, not an advisory Guidelines' sentence of 37 to 46 months, would be reasonable and

appropriate.  See id. at 11.

The Court has taken account of the Guidelines and other sentencing goals.  In particular, the Court has considered the advisory Guidelines' sentencing range established for the applicable category of offense committed by the applicable category of defendant.  The Court has also reviewed all of the factors set forth in 18 U.S.C. § 3553(a).  The Court notes that, while the advisory Guidelines' sentence is correctly calculated under United States v. Cisneros-Cabrera, the Seventh Circuit, in United States v. Garcia-Lopez, recognized that enhancing a sentence based upon a prior conviction that has been vacated for constitutional defect may raise due process concerns.  United States v. Garcia-Lopez, 375 F.3d at 589.  Many of the due process arguments that Paez-Segovia makes have more force in the Booker calculus.  It does seem unfair to increase the offense level 16 levels when the conviction is so in doubt and was vacated because of constitutional defects.  The Court also notes that Paez-Segovia's family members, including Ramos-Chavez, appear to be showing him considerable support.  See Sentencing Memo, Exhibit A, Letter from Luisa Ramos-Chavez to the Court (dated August 16, 2006); id., Exhibit B, Letter from Graciela Chavez to the Court (dated August 28, 2006); id., Exhibit B, Letter from Virginia Quintana to the Court (dated August 25, 2006); id., Exhibit B, Letter from Magdalena Paez to the Court.  Further, the Court notes the United States' statement that it would be unreasonable to sentence Paez-Segovia consistent with the 16-level enhancement.  See Transcript at 21:17-19 (Ortega).  Considering all of the relevant circumstances, the Court believes that a sentence of 435 days or time served is reasonable and appropriate.

The Court concludes that a sentence of time served is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. The Court believes the sentence promotes respect for the law, provides just punishment and adequate

deterrence, and protects the public. The Court also believes that, when taking account of other sentences the Court gives for immigration crimes, this sentence is fair. Also, given the infrequency of the scenario presented in this case, the variance is unlikely to create a disparity between similarly situated defendants.

**IT IS ORDERED** that Paez-Segovia's request for a variance contained within his Supplemental Sentencing Memorandum is granted. Paez-Segovia is sentenced to 435 days or time served.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
  Acting United States Attorney
Roberto D. Ortega
  Assistant United States Attorney

    *Attorneys for the Plaintiff*

Brian A. Pori
Inocente, PC
Albuquerque, New Mexico

    *Attorney for the Defendant*